UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALAN C. PACIFIC and LYNN M. STANCO
    Plaintiffs,
  and
ASCENSION SMART HEALTH FUNDED EMPLOYEE BENEFIT PLAN,
    Involuntary Plaintiff,
  v.
COSTCO WHOLESALE CORPORATION and XYZ INSURANCE COMPANIES
    Defendants.

Case No: 2:18-cv-1097

## PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY AND/OR STRIKE REPORT

The Plaintiffs, Alan Pacific (Pacific) and Lynn Stanco, by and through their attorneys, GENDE LAW OFFICE, S.C., respectfully submit this brief in support of Plaintiff's Motion to Exclude Certain Expert Testimony and/or Strike Expert's Report. In support thereof, Plaintiff states as follows:

**I. FACTS**

This matter stems from Pacific's slip and fall at the defendant's, Costo, retail location in Grafton, WI, on July 8, 2015. A summons and complaint was filed on June, 19, 2018, in Milwaukee County State Court. Costco successfully sought removal of Pacific's state law claims to Federal Court on July 17, 2018. (D.1)

On February 19, 2019, Costco's retained medical expert, Dr. Ryan Pierce (radiologist), who undertook a review of plaintiff's pre and post fall diagnostic testing. (Gende Decl., ¶2, **Ex.A**) Dr. Pierce was deposed on October 2, 2019, and admitted that his opinions were based on an unnamed, undisclosed bio mechanical engineer's renderings that were contained in Pierce's report:

> Q Where would I be able to locate a list of documents that you reviewed in preparation for providing these opinions?

**A There were no documents that I reviewed outside of the images, to my knowledge.** (Gende Decl., ¶3, **Ex.B** at 12)

**A I reviewed in total two lumbar spine MRIs, dated 2013 and 2015; I reviewed hip and pelvis x-rays from 2013 and 2016; I reviewed a knee MRI from 2018; I reviewed a wrist MRI from 2015; and those would be all of the exams that I reviewed.** *Id.* at 13.

Dr. Pierce admitted the only medical records he looked at were diagnostic films:

Q Well, you're only doing an imaging review. That is 1 the only medical record that you've looked at are diagnostic films…

**A Correct.**

Q …for Mr. Pacific, right?

**A That's correct.** *Id.*

*****

Q You never met with Mr. Pacific to check his range of motion, areas of tenderness, things of that nature, true?

**A True.**

Q This was a strict review of only imaging studies, true?

**A True.** *Id.* at 18-19.

Q All right. So tell me the process you went through in creating these images and the squares that are contained on the images.

**A So the images that you have with the shading and squares are created by a biomedical engineer at 4D. So the process is, I'll receive a case, I'll get a simple email that says I have a case to review, I'll review the images, as I did for this lumbar spine, and I'll create my report. The report will then go to the biomedical engineer at 4D, who in this case will take pictures from the 2013 exam and the 2015 exam and summarize my findings in pictures and create the images, with some shading or highlights, highlighting, you know, the areas of interest on the report and then prepare those for the client.**

Q Okay. Just so I'm clear, you look at films, you identified some opinions that you have, and then a biomedical engineer creates the images that are part of Exhibit No. 2?

> **A Yes. I mean, just to be clear, also, for day-to-day purposes, a biomedical engineer is not typically creating images. It's specific for 4D. So the 4D biomedical engineer takes these pictures and creates them as an exhibit that can be used by a client.**
>
> Q So you have -- you take no part in creating these images, correct?
>
> **A The only part I take in creating the images is creating an initial report and then, once the images are created, he'll send them to me just for verification.**
>
> Q So the simple answer to my short question is you took no part in creating these images as part of Exhibit No. 2. You did not create these images, true?
>
> **A I did not create these images. True.**
>
> *****
>
> Q So the simple answer to my short question is you took no part in creating these images as part of Exhibit No. 2. You did not create these images, true?
>
> **A I did not create these images. True.**
>
> Q And that would be for page 3 as well, you didn't create those images, right?
>
> **A Correct.**
>
> Q Page 5, you didn't create those images, true?
>
> **A Page 5. Correct.**
>
> Q And the last page, you didn't create any of those images, either, true?
>
> **A True.** *Id.* at 19-21.

Dr. Pierce admitted he is providing no opinions on causation:

> Q And when you say "to review the medical imaging only," you have not been retained to provide opinions on causation in this case, true?
>
> **A True.** *Id.* at 13.

Dr. Pierce was totally unaware of the mechanism of plaintiff's injury:

> Q And what was the event for the date of loss that you are providing opinions for on behalf of Mr. Fredericks and Costco?
>
> **A I do not know.**

Q You don't know the mechanism by which Mr. Pacific was injured?

**A Correct**.

Q You don't know if he was in an auto accident, correct?

**A Correct.**

Q You don't know if he was hit by a vehicle, correct?

**A Correct.**

Q You don't know if he fell down a flight of stairs, correct?

**A Correct.**

Q And you don't know if he slipped on a concrete floor, correct?

**A Correct.** *Id.* at 16.

*****

Q And because all you reviewed were diagnostic films and no medical history otherwise for Mr. Pacific, you don't know the severity of the injuries reported to the treating physicians, true?

**A I do not know his subjective state or what was conveyed to the physicians, correct.**

Q You haven't read any of the physicians' causation reports, true?

**A True.** *Id.* at 16-17.

Dr. Pierce further admitted he does not treat patients as part of his practice, but instead is primarily employed to review diagnostic films:

Q So describe for me an average day in your work life.

**A An average day would include arriving at either a clinic or hospital. Our group covers a number of hospitals from upper Wisconsin to the south in Sheboygan. So we would arrive in the morning, usually with, depending on the size of the hospital, one to five other team members. Our group would then read the assortment of CTs, x-rays, MRIs, ultrasounds throughout the day. We would also provide image- guided procedures that are required or ordered at that facility.** *Id.* at 10.

*****

> Q Okay. Let's restrict our answer to the time period where you're reviewing films with your team. Are you meeting with patients at the same time or just looking at films?
>
> **A Just looking at films, typically.** *Id.* at 11.
>
> *****
>
> Q Do you have patients that you see on a regular basis?
>
> **A No.**
>
> Q Have you ever had patients that you see on a regular basis as part of your practice?
>
> **A Not really.** *Id.* at 14.

## II. STANDARD

### A. Daubert

The decision to exclude expert testimony is left to the sound discretion of the district court. *Bradley v. Brown*, 42 F.3d 434, 436 (7th Cir. 1994). The admissibility of expert evidence is governed by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny. *See Winters v. FruCon Inc.*, 498 F.3d 734, 741 (7th Cir. 2007). Fed.R. Evid. 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court must serve as a gatekeeper to ensure that expert evidence is both reliable and relevant pursuant to the foregoing standards. *Daubert*, 509 U.S. at 589. The inquiry applies not only to scientific testimony, but to all expert testimony. *U.S. v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). In other words, a district court must "make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 506 U.S. 137, 141 (1999).

### B. Rule 26

The goal of Rule 26 disclosure requirements, and the Court's goal in this case, is to create a level playing field. *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F. Supp. 2d 1072, 1079 (N.D. Ill. 2012). The sanctions for noncompliance with disclosure requirements are found in Rule 37 of the Federal Rules of Civil Procedure. Rule 37 allows a district court to impose sanctions if the court finds that a party did not comply with discovery requirements. Where a party fails to provide information required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008). Rule 37 further provides that in addition to, or instead of, the exclusion sanction the court may award reasonable expenses, inform a jury of the party's failure, and impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). A Rule 37 sanction must be "one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado by Salgado v. GMC*, 150 F.3d 735, 740 (7th Cir. 1998)*; Weistock v. Midwestern Reg'l Med. Ctr.*, No. 07 C 1678, 2010 U.S. Dist. LEXIS 39935, at *8 (N.D. Ill. Apr. 23, 2010); *Allstate Ins. Co.* at 1078.

## III. ARGUMENT

### A. *Daubert*

Here, Dr. Pierce did no physical exam of the plaintiff, reviewed no medical records other than a few diagnostic images, reviewed no causation reports, did not prepare the images contained in his report upon which he relies to provide "expert" opinions, does not treat patients, will not render any causation opinions, and is unaware of the plaintiff's mechanism of injury. Dr. Pierce's opinions meet none of the *Daubert* elements, let alone all of them. Here, the district court must "make

certain that [Dr. Pierce], whether basing testimony on his professional studies or personal experience, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.* at 141. Dr. Pierce's opinions are not based on a record review and have nothing to do with causation. The images in his report upon which he relies were created by someone else. Dr. Pierce's opinions are irrelevant to the finder of fact because they have nothing to do with causation, but Costco will ask the jury to guess, speculate and conjecture what Pierce's readings of images may or may not mean on the issue of plaintiff's injuries and/or pre-existing conditions.

As to the first element in *Daubert*, Dr. Pierce's testimony is not based upon sufficient facts or data, because he reviewed none of the thousands of pages of plaintiff's medical records and none of the treating physicians' causation reports. Worse yet, Dr. Pierce has zero information on the mechanism of plaintiff's injury. Dr. Pierce's opinions are reflected in renderings prepared by an unnamed, undisclosed biomedical engineer.

As to the second element *Daubert*, Dr. Pierce's testimony is not based on the product of reliable principles and methods, because his report incorporates by reference renderings of bio mechanical engineer whose methods are completely unknown and for which the foundation can never be laid. The defendant never named a bio mechanical engineer to lay the foundation for the renderings in Dr. Pierce's report, and Dr. Pierce cannot lay the foundation because he did not created the renderings.

As to the third element *Daubert*, Dr. Pierce cannot and has not applied the principles and methods reliably to the facts of the case because he does not know any of the facts of the case, did not prepare the renderings in the reports, has no opinions on causation and only reviewed several diagnostic reports.

Finally, the defendant would be in violation of Rule 26 for its failure to timely name witnesses and provide corresponding reports based on the admission that Dr. Pierce's opinions relative to renderings he did not create were done by an unnamed, undisclosed bio mechanical engineer. Even if Dr. Pierce qualified as an expert under the *Daubert* elements, which he does not, his "report" violates Rule 26 and must be stricken as a result.

### B. Violation of Rule 26

Federal Rule of Civil Procedure 26(a)(2) sets the standards for disclosure of expert testimony. Specifically, Rule 26(a)(2)(B) requires a party to submit a report from any expert witness it might use at trial. This report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Allstate Ins. Co.* at 1077; Fed. R. Civ. P. 26(a)(2)(B). Here, Dr. Pierce's "report" fails each and every requirement under the aforementioned elements. Dr. Pierce cannot base opinions on renderings created by someone else, for which no expert disclosure has been made, no facts or data revealed. An unnamed, undisclosed bio mechanical engineer created the renderings upon which Dr. Pierce relies. This violates both the letter and the spirit of Rule 26. As a result even if Dr. Pierce qualified as an expert in this case, which he does not, his report must be stricken because it violates Rule 26.

Despite Dr. Pierce's deposition being completed on October 2, 2019, and the multitude of infirmities relating to the opinions contained therein and the failure to disclose the bio mechanical engineer's information, the defendant has taken exactly zero steps to remedy its violations of Rule 26.

IV. CONCLUSION

WHEREFORE, Plaintiff respectfully request that the Court strike defendant's expert, Dr. Pierce, under the principles of *Daubert*, and/or strike his report for the defendant's violation of Rule 26.

Dated at Pewaukee, Wisconsin this 27th day of November, 2019.

        Gende Law Office, S.C.

        s/ James J. Gende II
        James J. Gende II
        WI SBN 1030921
        N28 W23000 Roundy Drive, Ste. 200
        Pewaukee, WI 53072
        Telephone (262)970-8500
        Fax (262)970-7100
        jgende@jamesgendelaw.com