UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ALAN C. PACIFIC
LYNN M. STANCO,

                Plaintiffs,                Case No. 18-CV-01097-NJ

   -and-

ASCENSION SMART HEALTH SELF FUNDED
EMPLOYEE BENEFIT PLAN,

                Involuntary Plaintiff,

   -vs-

COSTCO WHOLESALE CORPORATION,
XYZ INSURANCE COMPANIES,

                Defendants.

---

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY AND/OR STRIKE EXPERT'S REPORT**

---

Defendant Costco Wholesale Corporation ("Costco" or "Defendant"), respectfully submits this Response in Opposition to Plaintiffs Alan C. Pacific and Lynn M. Stanco's (collectively hereinafter "Plaintiffs") Motion to Exclude Expert Testimony and/or Strike Expert's Report.

### I.    INTRODUCTION

This matter stems from the Plaintiff Alan C. Pacific's ("Pacific") slip and fall at the Defendant's premise. Pacific alleges that as a result of his fall he sustained serious and permanent injuries, including permanent injuries to body parts that Pacific had previously sustained injuries to. Plaintiffs have filed a Motion to exclude testimony of one of Defendant's

1

medical experts, Dr. Ryan Peirce ("Dr. Peirce"), a radiologist and/or to strike Dr. Peirce's expert report. Plaintiffs' motion should be denied for multiple reasons.

First, contrary to Plaintiffs' argument, Costco has not violated any Rule 26 disclosure requirement with respect to Dr. Peirce's testimony or report. Plaintiffs misrepresent the testimony that Dr. Peirce provided related to the image renderings that were included in his report. As Dr. Peirce explained these renderings were created by a third-party, but were developed and created as visual summaries of Dr. Peirce's own opinions. The renderings were thereafter verified by Dr. Peirce as being an accurate representation of his opinions prior to him including the renderings in his report. Thus, the renderings are merely demonstrative evidence that is admissible in conjunction with Dr. Peirce's opinions.

Second, Plaintiff's argument that Dr. Peirce is not qualified to give expert testimony because he does not offer a causation opinion is illogical and appears to be a misunderstanding of the nature of Dr. Peirce's expertise and opinions. Specifically, Dr. Peirce's expertise is in the field of radiology. As a radiologist, Dr. Peirce's job is "to provide diagnoses or imaging findings to [the] referring physicians[,]" by reviewing, analyzing, and/or comparing a particular patient's imaging studies. Thus he provides diagnostic opinions based on what is visible or not visible in the imaging studies for a particular patient. His expertise is not determining whether or not a particular event caused an injury, rather his expertise is diagnosing the existence and extent of an injury in a patient's imaging studies.

Because Dr. Peirce is not only qualified but provides relevant and reliable testimony related to the Pacific's injuries, Plaintiffs' motion to exclude Dr. Peirce's testimony and or strike his report must be denied.

II. **BACKGROUND**

Pursuant to Rule 26 and the Scheduling Order set by this Court, Plaintiffs and Defendant were required to disclose the identity and the initial reports of their expert witnesses by January 2, 2019 and March 1, 2019 respectively. (Doc. 14).

On March 1, 2019, Defendant timely disclosed and produced the reports of their expert witnesses, including Dr. Ryan M. Peirce. (Fredericks Aff., Ex. A). In his report, Dr. Peirce analyzed and compared various imaging studies taken of the Plaintiff both pre and post fall and noted his findings and impressions of what the imaging studies depicted as related to the Plaintiff's injuries and diagnoses. (*See id.*). Importantly, Dr. Peirce did not offer any causation opinions as to the ultimate cause of the injuries. (*Id.*). Instead his findings and impressions focused only on his interpretations of the imaging studies he reviewed. (*Id.*). Important to this lawsuit, Dr. Peirce opined certain injuries that Plaintiff alleges were caused by the slip and fall giving rise to this lawsuit, were chronic in nature and/or were visible in pre-fall imaging studies. (*Id.*).

Following the disclosure of the reports, the parties agreed to schedule the deposition of one of Defendant's named experts, Dr. Peirce, on October 2, 2019. (*See* Fredericks Aff., Ex. B at 1). During his deposition, Dr. Peirce was asked generally about his practice as a radiologist and a radiologist's role in the diagnosis process. He testified:

> Q: As part of your practice as a radiologist, do you provide diagnoses to any patients that you meet with?
>
> A: Yes.
>
> Q: And tell me how you endeavor to do that with your patients. How do you provide diagnoses?
>
> A. By viewing the images, we often get a picture of what is happening with the patient. It's not always conclusive or definitive on what the exact diagnosis is, but we will use the imaging finding and any other information we have to provide either a differential diagnosis, which is a list of most common

3

> diagnoses or most likely, as an opinion, or there are sometimes imaging findings that reveal a clear diagnosis, for example, a fracture, you know, a simple diagnosis.
>
> Q: As a radiologist, your responsibility is not to provide a diagnoses to your patients because you have none, true?
>
> A: Our job is to provide diagnoses or imaging findings to our referring physicians.
>
> Q: Diagnoses, meaning what you observe on the films.
>
> A: Correct.
>
> Q: Not the underlying symptomology or progressive disease that may be affecting the other doctors' patients, correct?
>
> A: General speaking. I think that's accurate. The imaging is to be taken in context with the clinical presentation.
>
> Q: So you receive other doctors' patients where those other have prescribed diagnostic testing to be completed and then you complete that process, true?
>
> A: True.
>
> Q: And then subsequently, you provide your readings of the images to the doctor, and that's the extent of your involvement, true?
>
> A: Typically. There certainly are other cases, but I would say that covers the vast majority of the time, yes.

(Fredericks Aff., Ex. B at 13:21-25; 14:1-9, 14:18-25, 15:1-12). He noted that in an average day he reviews and interprets numerous CT scans, X-rays, MRIs, ultrasounds for different patients. (*Id.* at 10:4:14). He further explained the focus of his practice does not require him to review a patient's entire medical history or records as he is not making a causation opinion for particular injuries. (*Id*. 13:6-20). He further confirmed that he is not offering any specific causation testimony in this case, explaining:

> Q: So you don't intend to express any opinions either today or at trial disputing the causation reports from the treating physicians, true?
>
> A: True. I don't believe that's in my scope of practice.

4

> Q: And why isn't it in your scope of practice?
>
> A: My training is centered around imaging and evaluation and rendering opinions on the imaging, not specifically examination of the patient, typically, and the treatments thereafter.

(*Id.* at 17:6-14). As part of evaluating and rendering opinions on a patient's imaging studies, Dr. Peirce testified that a radiologist is able to determine whether an injury is acute or chronic. (*See id.* at 29:11-24). This is the process that Dr. Peirce utilized in his review of Pacific's pre and post fall imaging studies. Following his review, he rendered a report wherein he stated his findings as to what the pre and post imaging studies depicted. (*See* Fredericks Aff., Ex. A). Dr. Peirce's report was then sent to Authentic4D to make visual renderings of his opinions. (Fredericks Aff.,Ex. B. at 20:1-12). Dr. Peirce acknowledged he did not personally create the renderings, but explained that the renderings represented a visual summary of his findings and were created and developed based solely on his findings. (*Id.* at 20:1-12, 21:10). Every rendering created was then sent back to Dr. Peirce to verify they accurately represented his opinions, prior to him including the renderings in his report. (*Id.* at 20:24-25, 21:1-2).

### III. <u>LEGAL STANDARD</u>

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm, Inc*., 509 U.S. 579 (1993). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. The inquiry

5

Case 2:18-cv-01097-NJ   Filed 12/17/19   Page 5 of 12   Document 32

under Rule 702 is "flexible" and the list of factors neither necessarily nor exclusively apply to all experts or in every case because there are many different kinds of expertise and many different kinds of experts. *See Daubert*, 509 U.S. at 594; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Rather, the law grants a district court broad latitude and discretion in exercising its function as a gate-keeper with respect to testimony offered under Rule 702 to ensure that the testimony is both relevant and reliable. *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire*, 526 U.S. at 147 (1999)); *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011).

In performing its gate-keeper role under the expert witness rule, a district court evaluates: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony. *Myers v. Illinois Central R.R. Co*., 629 F.3d 639, 644 (7th Cir. 2010). In the end, however, the gate-keeping inquiry must be tied to the facts of the particular case. *Kumho Tire*, 526 U.S. at 150. Thus, when deciding whether to admit expert testimony, it is not the court's role to determine whether an expert's opinion is correct; rather, the court considers only whether the expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound. *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013); *see also Cooper v. Carl A. Nelson & Co*., 211 F.3d 1008, 1021 (7th Cir. 2000) (concluding that instead of excluding relevant evidence, the proper method of attacking shaky medical evidence is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.").

IV. **ARGUMENT**

In their present motion, Plaintiffs challenges the admissibility of Dr. Peirce's expert report and testimony arguing that Dr. Peirce is not qualified to render an expert opinion, and that

his opinions are based on insufficient information and are therefore unreliable. Any inquiry into the admissibility of Dr. Peirce's testimony or report must focus on whether Dr. Peirce is qualified, his methods are reliable, and his testimony is relevant. Here, all three factors are met and Dr. Peirce's testimony and report are admissible and relevant. Furthermore, the information he included in his report, specifically the renderings, were created as summaries of Dr. Peirce's findings. These renderings are therefore merely demonstrative evidence that is admissible at the discretion of the Court. Therefore, the Plaintiffs' Motion to Exclude Dr. Peirce's Testimony and/or Strike His Expert Report must be denied.

### A. Dr. Peirce is Qualified to Give Expert Opinion

To determine if an expert is qualified to testify on a particular matter, courts consider the proposed expert's full range of practical experience as well as academic or technical training. The focus is not on whether the expert is qualified generally. *Myers*, 629 F.3d at 644. Rather, the focus is on whether the expert's "qualifications provide a foundation for [him] to answer a specific question." *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). Here, the specific questions Dr. Peirce will be asked relate only to the findings in his report. His drafted his report after he conducted a review and interpretation of various imaging studies of Pacific's conditions pre and post fall. (*See* Fredericks Aff., Ex. A). He is not and cannot be asked questions regarding the cause of Pacific's injuries, as he explained this is not within his scope of practice. (*See* Fredericks Aff., Ex. B at 17:6-14). As his report details, his opinions are on what the imaging studies showed to Pacific's condition pre and post fall. (*See* Fredericks Aff., Ex. A). Therefore, Dr. Peirce must simply be qualified to answer questions specifically related to his findings after reviewing and interpreting the imaging studies. There is no dispute that Dr. Peirce has such qualifications.

7

Dr. Peirce is a medical doctor licensed and board certified in Radiology. (*See* Fredericks Aff., Ex. B at 9:13). His typical work day includes reading a number of x-rays, MRIs, and other imaging studies throughout the day. (*Id.* at 10:5-14). Considering his full range of practical experience as well as his academic and technical training there is no question that Dr. Peirce is qualified to render an expert opinion on Pacific's imaging studies. Furthermore, his qualifications are within the same technical area as the subject matter of his report and testimony. (*Id.* at 17:11-14). His opinions relate solely to the subject matter of his expertise (radiology), and specifically reviewing, evaluating and rendering opinions of the injuries present in the plaintiff's imaging studies. (*Id.*). Thus, any argument that Dr. Peirce is not qualified to render these expert opinions is without merit.

### B. Dr. Peirce's Opinions Are Reliable.

Pacific's complaint states that he suffered acute injuries after a slip and fall at the Defendant's store. (*See generally* Doc. 1, Ex. 1). If permitted to testify, Dr. Peirce would offer opinions consistent with his report which documented his review of the pre and post fall imaging studies of Pacific and set forth his findings as to the changes to the particular body parts imaged in the pre and post fall imaging studies. (*See* Fredericks Aff., Ex A). Plaintiff alleges Dr. Peirce's opinions are unreliable because he did not consider all of Pacific's medical history when rendering these diagnostic findings and opinions. (Doc. 29, Pls.' Motion to Exclude at 7). However, as Dr. Peirce testified during his deposition, a patient's prior medical history is irrelevant when reviewing and offering an opinion as to his impressions of a patient's imaging studies. (*See* Fredericks Aff., Ex. B at 13:6-16). Specifically, Dr. Peirce stated knowing the cause of a particular injury is irrelevant when opining what conditions are visibly present in the imaging studies. (*Id.*). For example, knowing the cause of how someone broke a bone does not change the opinion or diagnosis that the bone is broken. (*See id.* at 15:21).

8

Here, Dr. Peirce testified that he reviewed the imaging studies as he was accustomed to doing based on his knowledge, skill, professional experience, training, and education. Plaintiffs have offered no evidence that Dr. Peirce's methods in reviewing Pacific's imaging studies departed in any way from the accepted diagnostic methods employed by other radiologists. Thus, Dr. Peirce's failure to consider all of Pacific's medical history does not render Dr. Peirce's opinions unreliable.

Plaintiff further alleges that Dr. Peirce's opinions are unreliable because his opinions are "based on an unnamed, undisclosed bio mechanical engineer's renderings[.]" Yet, this misstates Dr. Peirce's testimony. (Doc. 29, Pls.' Motion to Exclude at 1). Dr. Peirce acknowledged that the images included in his report were renderings developed by a biomedical engineer at Authentic4d. (*See* Fredericks Aff., Ex. B at 20:1-2). Importantly, however, Dr. Peirce explained that these renderings were developed by the engineer based on Dr. Peirce's opinions as set forth in his report. (*Id.* at 20:3-12). He further explained the renderings were developed as summaries of his opinions, in an effort to assist and aid the client in understanding the opinions. (*Id.*). Furthermore, the renderings were reviewed and verified by Dr. Peirce as being an accurate representation of his opinions, prior to them being included in his report. (*Id.* at 20:24-25, 21:1-2). Because the renderings were developed based on Dr. Peirce's opinions, such renderings are reliable.

**C. Dr. Peirce's Opinions are Relevant.**

Plaintiff argues that Dr. Peirce's opinions "are irrelevant to the finder of fact because they have nothing to do with causation" and that the jury will be left to "speculate and conjecture what Peirce's readings of images may or may not mean on the issue of plaintiff's injuries and/or pre-existing condition." (Doc. 29, Pls.' Motion to Exclude at 7). Plaintiffs further contend that

9

Dr. Peirce cannot give a causation opinion as to his injuries because his testimony is "not based upon sufficient facts or data" as Dr. Peirce did not review all of plaintiff's medical records. Plaintiffs' argument, however, fails to address the fact that Dr. Peirce is not and has never been named as an expert witness offering a causation opinion. (*See* Fredericks Aff., Ex A). Rather, Defendant's Rule 26(2) Expert Disclosures set forth the testimony that Dr. Peirce will provide is related to the plaintiff's injuries and permanency claim, and Dr. Peirce's reports, produced to the plaintiffs as part of the Rule 26(2) disclosures, provided this basis. *Id.*

As explained in his expert report and as set forth in his deposition testimony, he performed a review of certain imaging studies in the plaintiff's medical history both pre and post the accident. His opinions relate to diagnosing and evaluating the extent of Pacific's particular injuries, specifically whether some or all of the injuries are acute or chronic and the condition of the injuries as they appear in the imaging studies. (*See* Fredericks Aff., Ex. B at 14:1-9). These opinions are different than offering causation opinions, and instead focus on diagnosing what the specific injuries are or may be. (*Id.*). Because Dr. Peirce is not giving a causation opinion, he is not required to perform a review of the plaintiff's entire medical history. *See, e.g., Cooper*, 211 F.3d at 1020-1021 (holding that a medical expert's testimony were admissible despite the fact that the expert never reviewed the patient's medical history prior to giving opinion. Court concluded such a topic is more appropriate to explore on cross-examination).

### D. The Visual Renderings Created By Authentic4D are Demonstrative Evidence of Dr. Peirce's Opinions and are Admissible.

By definition, an expert's purpose is to help the trier of fact understand the evidence or determine a fact in issue. FED. R. OF EVID. 702. As such, demonstrative evidence that works as an extension of the expert by offering a visual representation or summary of the expert's testimony should is admissible. *See Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701

10

(7th Cir. 2013). In fact, a number of courts have concluded that when discussing a party's injuries, an expert's use of photographs or graphic models is appropriate and admissible. *See, e.g., Wipf v. Kowalski*, 519 F.3d 380 (7th Cir. 2008) (holding a district court did not abuse its discretion by admitting visual aids depicting "normal" anatomy in contrast to the party's anatomy); *Christian v. Hertz Corp.*, 313 F.2d 174 (7th Cir. 1963) (finding a model of a human spine is admissible as demonstrative evidence at the court's discretion); *see also Roy v. St. Lukes Medical Center*, 2007 WI App 218, ⁋⁋ 28-29, 305 Wis. 2d 658, 741 N.W.2d 256 (holding computer-generated animations depicting parties' theories of events during a surgery were admissible).

The Plaintiffs argue Dr. Peirce's report should be stricken because the Defendant violated Rule 26 by not naming the biomedical engineer who created the visual renderings. However, the Plaintiffs' argument has no basis in law. In order to comply with the disclosure requirements under Federal Rule of Civil Procedure 26(a)(2), any demonstrative evidence which summarizes or supports an expert's opinions, and which the expert relies, simply must be contained in the expert's report. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1988) (noting that the category of exhibits to be used as a summary of or support for the expert's opinion "encompasses demonstrative evidence which summarizes or supports the expert's opinion."). There is no requirement that the demonstrative evidence be created by the expert himself, so long as the expert discloses the evidence, and is able to establish that the evidence is a fair and accurate representation of what the witness is trying to describe. *See, e.g., State v. Denton*, 2009 WI App 78, ⁋ 7 n.1, 319 Wis. 2d 718, 768 N.W.2d 250.

Here, contrary to the Plaintiffs' arguments, the visual renderings created by Authentic4D are admissible as demonstrative evidence. As Dr. Peirce explained during his deposition, the

renderings were created based on his opinions set forth in his report. (Fredericks Aff., Ex. B. at 20:1-12). The renderings serve as visual representations or summaries of Dr. Peirce's opinions. (*Id.*). Dr. Peirce verified the renderings were fair and accurate representations of his opinions before including them in his report. (*Id.* at 20:24-25, 21:1-2). Further, the renderings were properly disclosed under Rule 26(a)(2)(B) as they were encompassed in Dr. Peirce's report, and said report was timely produced to the Plaintiffs pursuant to this Court's scheduling order. Because Authentic4D's visual renderings are offered only to illustrate and summarize Dr. Peirce's opinions and were properly disclosed to Plaintiffs, the Plaintiffs' motion to strike Dr. Peirce's report due to the inclusion of these renderings has no basis and must be denied.

## V. CONCLUSION

For all the foregoing reasons, Costco respectfully requests that this Court deny the Plaintiffs' Motion to Exclude Dr. Peirce's Testimony and/or Strike Dr. Peirce's Report.

Respectfully Submitted on this 17th day of December, 2019,

**Borgelt, Powell, Peterson & Frauen, S.C.**
Attorneys for Costco Wholesale Corporation

s/ *James M. Fredericks*
James M. Fredericks
WI SBN 1030921
1243 N. 10th Street, Suite 300
Milwaukee, Wisconsin 53205
Telephone: (414)276-3600
Fax: (414) 276-0172
jfredericks@borgelt.com