# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALAN C. PACIFIC and
LYNN M. STANCO,

    Plaintiffs,

and

ASCENSION SMART HEALTH SELF FUNDED
EMPLOYEE BENEFIT PLAN,

    Involuntary Plaintiff,

    v.     Case No. 18-CV-1097

COSTCO WHOLESALE CORPORATION
and XYZ INSURANCE COMPANIES,

    Defendants.

## DECISION AND ORDER ON PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

On July 8, 2015, Alan C. Pacific slipped and fell at a Costco store in Grafton, Wisconsin. Pacific and his wife, Lynn M. Stanco, sue Costco Wholesale Corporation and its unnamed insurer for negligence, violation of Wisconsin's safe-place statute (Wis. Stat. § 101.01), and Stanco's loss of consortium. The plaintiffs move for partial summary judgment as to their Wisconsin safe-place statute claim. For the reasons explained below, the plaintiffs' motion is denied.

# FACTS[1]

Pacific arrived at the Grafton Costco store on July 8, 2015 at 9:50 a.m. (Plaintiffs' Proposed Findings of Fact ("PPFOF") ¶ 1, Docket # 27 and Defendants' Resp. to PPFOF ("Defs.' Resp.") ¶ 1, Docket # 35.) Pacific was the first customer in the store when it opened at 10:00 a.m. (*Id.* ¶ 2 and Defs.' Resp. ¶ 1.) As Pacific walked down the main aisle of the store, he slipped and fell on some water. (*Id.* ¶ 3 and Defs.' Resp. ¶ 3.) Costco's incident report indicated that Pacific's fall occurred at 10:05 a.m. (*Id.* ¶ 13 and Defs.' Resp. ¶ 13.) No signs were present in the area where Pacific fell at the time of his fall, or immediately prior to his fall. (*Id.* ¶ 4 and Defs.' Resp. ¶ 4.) A photograph taken by a Costco employee after Pacific's fall depicts a strip of water approximately fifteen feet long on the floor. (Affidavit of James J. Gende ("Gende Aff.") ¶ 8, Ex. F, Docket # 28 and Affidavit of James M. Fredericks ("Fredericks Aff.") ¶ 9, Ex. 4, Docket # 36, Deposition of Alan Pacific ("Pacific Dep.") at 38, Docket # 36-4.)

No Costco employee witnessed Pacific fall, nor did any employees see the strip of water on the floor prior to Pacific's fall. (Fredericks Aff. ¶ 7, Ex. 2, Deposition of Debra Wollemann ("Wollemann Dep.") at 19, 27, Docket # 36-2; Fredericks Aff. ¶ 8, Ex. 3, Deposition of Juan Checa ("Checa Dep.") at 13; Gende Aff. ¶ 6, Ex. D, Checa Dep. at 27, Docket # 28-4; Fredericks Aff. ¶ 10, Ex. 5, Deposition of Jon Timpson ("Timpson Dep.") at

---

[1] The plaintiffs assert in their reply brief that the defendants violated Civil L.R. 56(b)(2)(B) by failing to file a concise response to their proposed findings of facts. (Pls.' Reply Br. at 1–3, Docket # 41.) Thus, they argue that their proposed facts should be deemed undisputed. (*Id.* at 3.) Perhaps the plaintiffs simply did not see the defendants' timely response, found at Docket # 35. Otherwise, it is entirely unclear how the defendants' response to the plaintiffs' proposed findings of fact is deficient. The responses reproduce each numbered paragraph in the plaintiffs' proposed statement of facts and concisely respond to each paragraph with proper citation to supporting documentation. *See* Civil L.R. 56(b)(2). (Docket # 35.) Thus, I will not deem the plaintiffs' proposed findings of fact undisputed.

31, Docket # 36-5.) Pacific similarly testified that he did not see the water in the aisle before he slipped on it. (Gende Aff. ¶ 7, Ex. E, Pacific Dep. at 34, Docket # 28-5.)

Although the Costco employees could not recall the specifics of the cleaning and inspection of the floors that occurred on the day of Pacific's fall, the employees testified as to their general practices. Rocelia Gomez began working on the maintenance staff at the Grafton Costco in 2008. (Gende Aff. ¶ 5, Ex. C, Deposition of Rocelia Gomez ("Gomez Dep.") at 8–9, Docket # 28-3.) Gomez cleaned the floors on the day of Pacific's fall. (Fredericks Aff. ¶ 6, Ex. 1, Gomez Dep. at 22, Docket # 36-1.) Gomez testified that during the summer months, she reports to work at 7:00 a.m. (Gomez Dep. at 22, Docket # 36-1.) She spends about fifteen minutes checking the restrooms and breakroom and if everything looks clean, she moves on to her next task—cleaning the floors. (*Id.* at 22–23.) Gomez cleans the floors until "the door is open" for business. (Gomez Dep. at 9, Docket # 28-3.) No one assists her with this task. (Gomez Dep. at 23, Docket # 36-1.)

General warehouse manager Juan Checa further explained that before the doors are open for business, the entire premises is "mopped," using either a ride-on scrubber (the "Zamboni"), a smaller "walk behind" scrubber, and/or an actual mop. (Checa Dep. at 32, Docket # 28-4.) The tool used depends on the space being cleaned. (*Id.*) Checa explained that the Zamboni cannot fit into smaller spaces, so it is used to clean the larger, main aisles, while the "walk behind" scrubber is used for smaller, tighter aisles. (*Id.*) Mops are used around edges where the scrubbers cannot reach. (*Id.*)

Assistant warehouse manager Jon Timpson testified that an employee performs "floor walk" safety inspections throughout the day, with the first inspection typically occurring just prior to the store opening. (Timpson Dep. at 25, Docket # 36-5.) Debra

Wollemann worked as a merchandiser at the Grafton Costco in July 2015 and performed the morning "floor walk" on the day of Pacific's fall. (Fredericks Aff. ¶ 7, Ex. 2, Deposition of Debra Wollemann ("Wollemann Dep.") at 24, Docket # 36-2.) Wollemann explained that when conducting a "floor walk," she begins by picking up an inspection sheet and then inspecting the floors for spills or other safety issues. (*Id.* at 22.) At the end of the "floor walk," Wollemann writes down the time and has a manager sign the sheet. (*Id.*) If Wollemann observes any hazards on the floor, such as a spill, she logs the hazard on her sheet and either resolves the issue herself and records the action she took (i.e., cleaning up the spill), or she calls maintenance for assistance and records that action. (*Id.* at 17.) Although Wollemann had no independent recollection of inspecting the area where Pacific fell on July 8, 2015, her inspection sheet noted that she began her inspection at 10:05 a.m. that day and the inspection took approximately twenty-two minutes. (*Id.* at 24–26.)

Timpson testified that it is always Costco's intent to perform the "floor walk" just prior to opening the store because "we want to make sure it's safe before we roll the door open." (Gende Aff. ¶ 3, Ex. A, Timpson Dep. at 28, Docket # 28-1.) While Timpson testified that he had no reason to dispute that the safety inspection did not occur until after the store opened on July 8, 2015, he assured that was not the general practice. (Timpson Dep. at 25–26, Docket # 36-5.) Wollemann, on the other hand, testified that it was not unusual for the morning "floor walk" to occur just after the store opened. (Wollemann Dep. at 11–12, 26, Docket # 36-2.) Wollemann explained that she needed to wait for coverage at the front door before she conducted her walk, which sometimes meant waiting for someone from another department to become available to cover the front door. (*Id.*)

4

Because Pacific fell in a main aisle area, an area usually cleaned by the Zamboni, Checa testified that the water in the aisle where Pacific fell was "probably" left by the Zamboni. (Checa Dep. at 33, Docket # 28-4.) Timpson concurred that the liquid on the floor likely came from the Zamboni because they had "recently been scrubbing the floor like we do every day prior to opening" and he could not identify anything else that would leave water on the floor unless it was raining, which it was not that day. (Timpson Dep. at 28–29, Docket # 28-1.) Wollemann also agreed that the strip of water depicted in the photograph taken after Pacific's fall was consistent with what was sometimes left behind by the Zamboni if its squeegee mechanism did not catch all of the water. (Wollemann Dep. at 28, Docket # 36-2.)

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Id.* "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact

could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)). In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

I must also view the evidence presented through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at 254. Where, as here, the party moving for summary judgment also bears the burden of persuasion at trial (i.e., because the movants are the plaintiffs), the movant must establish each and every essential element of his claim. *See McKinney v. Am. River Transp. Co.*, 954 F. Supp. 2d 799, 803 (S.D. Ill. 2013) (citing *Celotex*, 477 U.S. at 32); *see also Lewis v. Kordus*, No. 09-CV-138, 2010 WL 3700020, at *1 (E.D. Wis. Sept. 14, 2010) ("[W]here the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party."). This differs from the usual summary judgment motion filed by a defendant (who does not bear the ultimate burden of persuasion at trial), who can prevail just by showing an absence of evidence to support any essential element of the non-movant's case. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

## ANALYSIS

The plaintiffs move for summary judgment in their favor on their claim that Costco violated the Wisconsin safe-place statute. The parties do not dispute that Wisconsin law governs the plaintiffs' claim. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008)

("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

Pursuant to Wisconsin's safe-place statute, Wis. Stat. § 101.11, every employer and owner of a public building is to provide a place that is safe for employees and for frequenters of that place, and "'[e]very employer and every owner of a place of employment or a public building . . . shall so construct, repair or maintain such place of employment or public building as to render the same safe.'" *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 170, 682 N.W.2d 857, 860 (quoting Wis. Stat. § 101.11(1)). This duty has a higher standard of care than that imposed by common-law negligence. *Id.* However, the safe-place statute addresses unsafe conditions, not negligent acts. *Id.* In addition, the law does not require an employer or an owner of a public building to be an insurer of frequenters of the premises. *Id.*

Further, "safe" is "a relative term." *Id.* ¶ 10. "Safe" does not mean completely free of any hazards; rather, what constitutes "safe" depends on the facts and conditions present and the use to which the place was likely to be put. *Id.* Just because a place could be made safer, it does not necessarily follow that an employer or owner has breached the duty of care established by Wis. Stat. § 101.11(1). *Id.* Rather, the duty set forth by the statute requires an employer or owner to make the place "as safe as the nature of the premises reasonably permits." *Id.* The "nature of the business" and the "manner in which [business] is conducted" are factors to be considered in assessing whether the premises are safe, within the meaning of § 101.11(1). *Id.* (internal citation omitted).

To be subject to the higher standard of care under the safe-place statute, a defendant must have actual or constructive notice that an unsafe condition or defect exists. *Kochanski v.*

*Speedway SuperAmerica, LLC*, 2014 WI 72, ¶ 32, 356 Wis. 2d 1, 25, 850 N.W.2d 160, 171. "In the context of an alleged safe-place violation, the general rule is that an employer or owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it." *Megal*, 2004 WI 98, ¶ 12. Proof of constructive notice generally "requires evidence as to the length of time that the condition existed." *Id.* Speculation as to how long the unsafe condition existed is insufficient to establish constructive notice. *Kochanski*, 2014 WI 72, ¶ 36.

In their opening brief, the plaintiffs make no showing that Costco had either actual or constructive notice of the unsafe condition (i.e., the water on the floor). (Pls.' Br., Docket # 26.) Not until the defendants denied having constructive notice in their response brief (Docket # 34) did the plaintiffs even attempt to address the notice element of their safe-place claim (Docket # 41). This is significant because the plaintiffs are the movants and have the ultimate burden of proof at trial. Thus, it is their burden to prove "every element of [their] case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party." *See Lewis*, 2010 WL 3700020, at *1. The plaintiffs' failure to make such a showing in their opening brief is reason enough to deny their motion. *See United States v. Banas*, 712 F.3d 1006, 1010, n.1 (7th Cir. 2013) (arguments not raised in opening brief are forfeited).

However, even considering the merits of the plaintiffs' claim, their motion fails because they do not present evidence that Costco had constructive notice of the unsafe condition. (Pls.' Reply Br. at 3.) Specifically, the plaintiffs present no evidence that the water Pacific slipped on was on the floor for any appreciable time. While the plaintiffs argue

that the "length of time following the use of the Zamboni until the opening of the store was a sufficient amount of time to establish constructive notice" (Pls.' Reply Br. at 6), they present no evidence as to when the Zamboni allegedly deposited the water on the floor in the area Pacific fell. Gomez testified that during the summer months, she reports to work at 7:00 a.m. and is cleaning the floors up until the doors open at 10:00 a.m. (Gomez Dep. at 22, Docket # 36-1 and Gomez Dep. at 9, Docket # 28-3.) Perhaps the water was left on the floor at 7:15 a.m. and thus was sitting for nearly three hours before the store opened. Such a scenario would support a finding of constructive notice by a reasonable jury. On the other hand, perhaps it was left at 10:00 a.m., only five minutes before Pacific's fall—not nearly enough time for a reasonably vigilant owner to discover and remedy the hazard. Speculation as to when the water was actually deposited on the floor is insufficient to establish constructive notice. *See Kochanski*, 2014 WI 72, ¶ 36.

Without evidence of the length of time the unsafe condition existed, the plaintiffs cannot show that Costco had constructive notice of the hazard, and therefore cannot prevail on the safe-place claim unless an exception to the timing requirement applies. The *Strack* exception, taken from the Wisconsin Supreme Court's decision in *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 150 N.W.2d 361 (1967), applies where a defendant's methods and processes could reasonably have been expected to give rise to an unsafe condition or the defendant had satisfactory methods and processes but failed to follow them. In *Strack*, the plaintiff was shopping in defendant's grocery store in the produce area where there were tables displaying fruit for sale in the center of a wide aisle. The plaintiff slipped on a small piece of fruit that was on the floor and injured her back and leg. *Strack,* 35 Wis. 2d at 53–54, 150 N.W.2d 361. The plaintiff sued the store alleging a violation of the safe-place statute.

Though the plaintiff had no evidence that the fruit had been on the floor for any appreciable amount of time, as would be required under the general rule for constructive notice, the *Strack* court determined that the grocery store had constructive notice because of its method of stacking fruit in the area of the store where the injury occurred. *Id.* at 55–56, 150 N.W.2d 361. The court explained:

> [W]hen an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises or may reasonably be expected from his method of operation, a much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice.

*Id.* at 55, 150 N.W.2d 361; *see also Steinhorst v. H. C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970) (reaffirming the *Strack* exception).

The parties disagree as to the breadth of the *Strack* exception. Costco argues that *Strack* is limited to situations where products are displayed in such a manner that it is reasonably foreseeable that a hazard will result despite precautions taken. (Defs.' Br. at 6, Docket # 34.) The plaintiffs, however, argue that *Strack* applies beyond injuries stemming from the manner of displaying products. (Pls.' Reply Br. at 7.)

There is support for both parties' readings of the *Strack* exception. As to Costco's reading, in *Megal*, the plaintiff slipped and fell on a ketchup-covered french fry while attending a show at an arena. The plaintiff had no evidence as to how long the fry had been on the stair prior to her fall. 2004 WI 98, ¶ 3. The plaintiff argued that the *Strack* exception applied to her case because the defendant could reasonably expect unsafe conditions to arise due to the method of selling concessions to the public, only having two janitors working in a 61,000-square-foot facility throughout which patrons can carry food and drink without

restriction, and having no specific procedures for patrolling the arena looking for spills. *Id.* ¶ 17.

The *Megal* court rejected the plaintiff's safe-place claim. In so doing, the court noted that the *Strack* exception applied "in a narrow class of cases where the method of merchandizing articles for sale to the public in the area where the harm occurred should have made that harm reasonably foreseeable at that location." *Id.* ¶ 18. Several unpublished decisions of the Wisconsin Court of Appeals subsequent to *Megal* have interpreted the *Strack* exception as limited to cases where the temporary unsafe conditions were caused by the manner of displaying products. *See, e.g.*, *Eesley v. Howard Young Med. Cntr., Inc.*, 2014 WI App 83, ¶¶ 14–18, 355 Wis. 2d 580, 851 N.W.2d 473; *Toliver v. Potawatomi Bingo & Casino*, 2009 WI App 158, ¶ 19, 321 Wis. 2d 748, 776 N.W. 2d 100; *Oxman v. One Beacon Ins. Co.*, 2005 WI App 233, ¶ 17, 287 Wis. 2d 828, 705 N.W.2d 905.

The plaintiffs rely on *Kochanski* in support of their interpretation of *Strack*. In *Kochanski*, the plaintiff slipped and fell on a patch of snow outside of a Speedway convenience store. The plaintiff could not establish either actual notice or the length of time the defect existed; thus, the court noted that the only way the plaintiff could demonstrate constructive notice was by producing evidence that Speedway did not have satisfactory snow removal methods and processes or that it had satisfactory snow removal methods and processes but did not follow them. 2014 WI 72, ¶¶ 39, 47. Because the plaintiff produced no evidence of this, he could not prove constructive notice through the *Strack* exception. Although the *Kochanski* court seemed willing to consider the *Strack* exception in the context of a case that did not involve an injury stemming from the manner of merchandising,

because it found the exception did not apply, it is not clear that the court actually endorsed a broader application of the exception.

But even assuming the *Strack* exception applies beyond injuries stemming from the manner of merchandising products, the plaintiffs' motion fails because there are genuine issues of material fact about whether Costco's methods and processes of cleaning and inspecting the floors were satisfactory. While the plaintiffs assert that "using a Zamboni spewing water on smooth concrete floors and failing to conduct the necessary inspection before the store opened" necessarily shows an unsatisfactory method of operation, the plaintiffs' opinion on this matter is not evidence. *See, e.g.*, *Megal*, 2004 WI 98, ¶ 20 (concluding that what was reasonable to expect for the management and maintenance of a 61,000-square-foot building where events are held and food is sold for the benefit of the patrons who attend an event was outside the realm of common knowledge). Whether an employer or owner of a premises has notice of an unsafe condition is generally a question of fact left to the jury, *Gerdmann by Habush v. U.S. Fire Ins. Co.*, 119 Wis. 2d 367, 371, 350 N.W.2d 730, 733 (Ct. App. 1984), and the plaintiffs have not put forth "evidence so compelling that no reasonable jury could return a verdict for [Costco]," *see Lewis*, 2010 WL 3700020, at *1. The plaintiffs present no evidence, for example, that a Zamboni should not be used to clean concrete floors in a facility such as Costco. Nor do they demonstrate that Costco's inspection methods were faulty. For these reasons, the plaintiffs' motion for partial summary judgment is denied.

**CONCLUSION**

The plaintiffs move for partial summary judgment on their Wisconsin safe-place statute claim. Because the plaintiffs do not show that, as a matter of law, Costco had actual or constructive notice of the alleged unsafe condition, the plaintiffs' motion is denied.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiffs' motion for partial summary judgment (Docket # 26) is **DENIED**. The clerk of court will contact the parties to set a telephone conference to address further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 28th day of February, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge